```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RODO INC.,                                                  :
                                                            :
                              Plaintiff,                    :
                                                            :    22-CV-9736 (VSB)
              -against-                                     :
                                                            :    OPINON & ORDER
                                                            :
TALLES GUIMARAES and ARI COHEN,                             :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Joshua Wurtzel
Christopher Dyess
Seth D. Allen
Vitali S. Rosenfeld
Jeffrey M. Eilender
Schlam Stone & Dolan LLP
New York, NY
*Counsel for Plaintiff*

Dov Ber Medinets
Gutman Weiss, P.C.
New York, NY
*Counsel for Defendant Talles Guimaraes*

Jonathan Marc Cooper
New York, NY
*Counsel for Defendant Ari Cohen*

VERNON S. BRODERICK, United States District Judge:

  Plaintiff Rodo Inc., ("Rodo") requests a preliminary injunction and temporary restraining order ("TRO") against former employees Talles Guimaraes and Ari Cohen. It seeks to prevent them from sharing trade secrets or working for ExactCar, a purported Rodo competitor, based on their employment agreements with Rodo. (Docs. 13, 14.)

I held a hearing on Rodo's motion for a TRO on November 18, 2022 (the "November 18 Hearing"). At that hearing, I denied Rodo's application for a TRO as to Guimaraes and held in abeyance a ruling on the TRO as to Cohen. (Doc. 24.) I also set an expedited schedule for briefing on a preliminary injunction and ordered Guimaraes and Cohen to file declarations discussing their use of Rodo's trade secrets and confidential information. (*Id.*) Guimaraes and Cohen submitted their declarations on November 23, 2022. (Docs. 25, 26.) Rodo then submitted a letter renewing its request for a TRO against Cohen and requesting that I reconsider my denial of a TRO against Guimaraes. (Doc. 30.) Cohen moves for oral argument if I am considering the entry of a TRO against him. (Doc. 29.) The parties have also submitted supplemental letters on the TRO as to Cohen based on new evidence uncovered in discovery. (Docs. 48, 49.) Having considered the papers of the parties and the information submitted at the November 18 Hearing, Rodo's motion for a TRO is DENIED as to Cohen and its request for reconsideration is DENIED as to Guimaraes. Cohen's motion for oral argument is DENIED as moot.

### I.     Legal Standards

#### A.  *Temporary Restraining Order*

"Ex parte relief . . . by way of a temporary restraining order is an emergency procedure." *Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *1 (S.D.N.Y. June 15, 2015) (citation omitted). The purpose of TROs is limited to "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer", so that a court can provide effective final relief. *KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, No. 20 CIV. 3274 (VM), 2020 WL 2554382, at *5 (S.D.N.Y. May 20, 2020) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). Courts have characterized ex parte TROs as "appropriate only where 'irreparable

injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted, or where advance contact with the adversary would itself be likely to trigger irreparable injury.'" *Lim Tung v. Consol. Edison of New York*, No. 19CV5444RRMSJB, 2019 WL 4805080, at *3 (E.D.N.Y. Oct. 1, 2019) (quoting *Little Tor Auto Ctr. v. Exxon Co., USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (citing examples including "discovery of contraband which may be destroyed as soon as notice is given")).

In considering whether to grant a TRO, a court must examine "whether the movants have demonstrated a threat of irreparable harm that will occur *immediately* to justify a temporary restraining order". *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020) (emphasis in original). "The court may issue a temporary restraining order . . . only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1); *see also Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962) ("The purpose of a temporary restraining order is to preserve an existing situation in statu quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.").

Aside from the issue of immediacy, the standard for the issuance of TRO is the same as for a preliminary injunction. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."). A party seeking a preliminary injunction must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Merkos L'Inyonei*

*Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002) (quoting *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002)).

Issuance of a TRO or preliminary injunction, "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). Moreover, "[t]he district court has wide discretion in determining whether to grant a preliminary injunction . . . ." *Moore*, 409 F.3d at 511.

### B. *Reconsideration*

"Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2021 WL 1700318, at *1 (S.D.N.Y. Apr. 29, 2021) (quoting *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012)). When a party seeks reconsideration, the party generally "must show either 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Phx. Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 14-CV-10116 (VSB), 2020 WL 4699043, at *1 (S.D.N.Y. Aug. 12, 2020) (quoting *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701–02 (S.D.N.Y. 2011)).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (internal quotation marks omitted); *see also Polsby v. St. Martin's*

*Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) ("[A] party may not advance new facts, issues or arguments not previously presented to the Court." (internal quotation marks omitted)). "Rather, 'the standard for granting [the motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The decision of whether to grant a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## II. Discussion

### A. *Cohen*

Rodo fails to demonstrate the clear showing of immediate irreparable injury necessary to justify entering a TRO against Cohen. Rodo alleges three injuries. First, it claims that Cohen breached the non-competition covenant of his employment agreement by working with ExactCar. (Doc. 14 at 12–17.) Second, it claims Cohen solicited Rodo employees to work at ExactCar in violation of the non-solicitation covenant of his employment agreement. (*Id.* at 17–18.) Third, it asserts that Cohen misappropriated Rodo's trade secrets in violation of the confidentiality covenant of his employment agreement, as well as state and federal law. (*Id.* at 18–22.)

Cohen has challenged each of these claimed injuries. Beginning with the non-competition injury, Rodo initially asserted that Cohen breached his non-competition agreement by working with ExactCar, which is a Rodo competitor because "[b]oth companies compete in the online auto marketplace . . . ." (Doc. 14 at 12.) Rodo further claimed that under Cohen's

employment agreement, he was "not prohibited from seeking employment elsewhere including with other high-tech startups like Rodo who do not compete in the online auto market industry." (*Id.* at 17.)  Cohen states in his declaration that he is not involved "in the sales of automobiles in the online marketplace" and that he has not "actively solicited any of Rodo's customers." (Doc. 26 ¶ 4.)  In response, Rodo modified its argument, asserting that Cohen may have violated the agreement "regardless of whether Cohen does his deals online, by phone, in person, or otherwise—as every deal Cohen does is a potential deal that Rodo loses." (Doc. 30 at 3.)

Rodo's assertions about the scale of the harms imposed by Cohen's violation of the non-competition covenant have shifted as well.  Rodo initially asserted that it suffered an 80 percent decrease in business with dealers who had worked with Cohen. (Doc. 14 at 11.)  In a subsequent filing, however, it admitted that this number was in error, and instead asserted a 50 percent decrease in business after Cohen left. (Doc. 22 at 7–8.)  Even this number, however, is based on just six dealers, and there is substantial variability in how much business was lost from each dealer.  One dealer's business with Rodo decreased by 25 percent, while another dealer's business decreased by 90 percent. (*Id.*)[1]

Updates provided in subsequent briefing do not fundamentally change this picture.  On January 5, Rodo submitted a letter noting that, since leaving Rodo, Cohen had "been doing business" with 37 car dealers with whom Rodo does business. (Doc. 48 at 1.)  Rodo delivered 886 cars from these dealers from March 2021 to the end of November 2021, when Cohen

---

[1] Given the small number of total sales done by Rodo with these six dealers, these percentages also paint a misleading picture of the decrease in Rodo's business.  For example, the dealer that decreased its deals with Rodo by 90 percent and the dealer that decreased its deals with Rodo by 25 percent both did 26 fewer deals through Rodo.  The dealer that reduced the number of deals it did with Rodo by the greatest amount (Dealer 3, which did 33 fewer deals) has the second smallest percentage decrease:  35 percent. (Doc. 22 at 7.)  Thus, while Rodo says that the business declines among its other dealers are comparable to the declines shown by these six dealers, this sales data is too variable and misleading to be the basis for any reasonable assertions about Rodo's business generally.

6

worked there. After Cohen's departure, Rodo delivered 440 cars, or about 50 percent less from March 2022 to the end of November 2022. It also delivered 929 cars overall, so they report that the 50 percent decrease in sales from these 37 dealers translated to a 47 percent decrease in overall sales for 2022. (*Id.* 1–2.)

Nothing stated during the November 18 Hearing or in Rodo's papers thus far clearly connects Cohen to Rodo's loss of business. There are no communications between Cohen and these dealers in the record, nor does the exhibit Rodo submits explain what it means for Cohen to be "doing business" with dealers or how this purported "business" caused their sales to decline. The closet connection is a statement from Rodo's CEO that Cohen engaged in an auto deal with a dealer who has stopped working with Rodo. (Doc. 15, ¶ 31.) It is not clear from this declaration what kind of deal it was it, such as whether it was online or in person, and where this dealer was located. Absent more evidence, the fact that Cohen is doing some kind of auto deal with a dealer who used to work with Rodo is not the kind of clear evidence that would support the entry of a TRO.

Rodo also fails to submit anything ruling out other explanations for this decrease like a general decline in car sales in 2022. In that January 5 letter, for example, it says how many cars it delivered overall from March 2022 to the end of November 2022, but does not give the same number for March 2021 to the end of November 2021. Total sales for that year might shed some light on whether the was a broad decline in industry sales or an unusual decrease limited to dealers who worked with Cohen.

Turning to the non-solicitation injury, the sole evidence Rodo offers of Cohen's breach of this covenant is a single paragraph in a declaration stating that the declarant believes that Cohen solicited Guimaraes to work for ExactCar. The basis for this belief is the fact that the two men

7

worked together and left Rodo three months apart. (Doc. 15 ¶ 22.) I find this connection too attenuated to support Rodo's non-solicitation claim.

Finally, Rodo asserts that "Cohen has been using confidential business information he learned through his employment with Rodo to steal away Rodo's dealer network, which is critical to Rodo's business." (Doc. 14 at 19.) In support, it cites seven paragraphs from a declaration by Rodo's CEO. (*Id.* (citing Doc. 15 ¶¶ 14–15, 24, 30–33.)) Of these, however, only paragraph 31 deals with the purported misuse of confidential data. Paragraphs 14, 15, and 30 summarize Cohen's skills and prior role at Rodo, paragraph 24 discusses Cohen's current role at ExactCar, and paragraphs 32 and 33 basically re-summarize paragraph 31. Paragraph 31 notes that Rodo has suffered an 80 percent decline in business and that one dealer in particular has stopped working with Rodo and is doing an unspecified auto deal with Cohen. (Doc. 15 ¶ 31.) As discussed above, the sales decrease and evidence of an unspecified auto deal with a single dealer does clearly demonstrate irreparable harm generally or specifically stemming from Cohen's use of confidential data. Additionally, Cohen categorically denies misusing or misappropriating Rodo's confidential information or engaging in online automotive sales. (Doc. 26 ¶¶ 2, 3, 6, 8–10.)

On these facts, Rodo has failed to make the clear showing of immediate irreparable harm necessary to support the issuance of a TRO. The breach of a non-competition covenant is not a per se irreparable harm; it "depends upon the factual particulars in each case." *JTH Tax, LLC v. Agnant*, 62 F.4th 658 (2d Cir. 2023) (quoting *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987)). Here, Rodo has made conflicting statements about what industries Cohen is prohibited from participating in and has not demonstrated a clear loss of business from Cohen's conduct. Cohen submitted a sworn

8

statement that he is not participating in the online-car sale market, which Rodo identifies as the most direct business it competes in. Its solicitation harm rests on a single thinly-supported paragraph in a declaration, and Cohen has categorically denied misusing or misappropriating confidential information. On these facts, I find that Rodo has not made the clear showing of irreparable injury necessary to support the extraordinary and drastic remedy of issuing a TRO.

### B. *Guimaraes*

Rodo cannot "point to controlling decisions or data that the court overlooked," and therefore, does not meet the exacting standard required for a motion for reconsideration. *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader*, 70 F.3d at 257 (internal quotation marks omitted)). Rodo argues that Guimaraes has admitted in his declaration that he took proprietary documents and now works for ExactCar, a Rodo competitor. (Doc. 30 at 5.) However, Rodo previously stated in their initial TRO motion that Guimaraes worked for a competitor, (Doc. 14 at 12–17), and that he was misappropriating confidential information, (*id.* 18–19). Guimaraes's declaration denies he possesses certain key pieces of Rodo's confidential information such as information about their car pricing algorithm, (Doc. 25 ¶¶ 5–7), and asserts that he has not misused or misappropriated any information he may have incidentally retained after he left Rodo, (*id.* ¶¶ 12–14, 19–25).

This factual picture is not fundamentally different from the one before me when I denied the TRO. In advance of the November 18 Hearing, Guimaraes provided a declaration from ExactCar's executive chairman asserting that ExactCar (and by implication Guimaraes) had not misappropriated Rodo's confidential trade secrets. (Doc. 23 at ¶ 4.) Guimaraes reiterated this position at the hearing. (Hearing Tr. 38:14-23, 40:7-12.)[2] Although Guimaraes's declaration

---

[2] "Hearing Tr." reference to the transcript of the conference held on November 18, 2022.

9

states that he may have incidentally retained certain Rodo information, it asserts that he has not used or otherwise misappropriated that information.

Turning to Guimaraes's employment at ExactCar, and ExactCar's position as a Rodo competitor, both Parties presented their positions at the November 18 Hearing. (Hearing Tr. 31:21-34:2 (Rodo), 34:14-37:9 (Guimaraes).) Nothing in Guimaraes's declaration meaningfully undermines or modifies the facts presented to me by the parties at that hearing. Accordingly, Guimaraes's declaration provides no new facts that would provide a basis for me to reconsider my ruling.

### III.   Conclusion

For the reasons stated, it is hereby:

ORDERED that Plaintiff's motion for a temporary restraining order against Ari Cohen is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for reconsideration of the denial of a temporary restraining order against Talles Guimaraes is DENIED.

The Clerk of Court is respectfully directed to terminate the motion at Doc. 29.

SO ORDERED.

Dated:   March 30, 2023
         New York, New York

_____
VERNON S. BRODERICK
United States District Judge