UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RODO INC.,

       Plaintiff(s),       **22-cv-9736 (VSB) (VF)**

  -against-             **ORDER**

TALLES GUIMARAES and ARI COHEN,

       Defendants.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

  On or about December 15, 2022, Plaintiff Rodo, Inc. ("Rodo") served a subpoena for documents and deposition testimony on non-party Exactcar, Inc. ("Exactcar"). See ECF No. 54-1. Even before it was served with the subpoena, Exactcar was aware of this action because its CEO, Kevin Azzouz, had filed a declaration in this case on November 17, 2022, and Rodo served on Exactcar a demand to cease and desist on October 25, 2022. See ECF Nos. 16-1, 23. The subpoena required compliance by January 18, 2023. Although Exactcar never objected to the subpoena, it failed to comply with the subpoena, or seek an extension of time to do so, by that deadline. See ECF No. 54 at 1; see also ECF No. 55 at 1. There is no dispute that the material sought in the subpoena is within the scope of discovery that the Honorable Vernon S. Broderick ordered on December 5, 2022. See ECF No. 55 at 1; see also ECF No. 38.

  On February 28, 2023, Rodo alerted the Court to Exactcar's failure to respond to the subpoena. ECF No. 54. Rodo sought an order from the Court compelling Exactcar's compliance with the subpoena and reimbursing Rodo for the cost of making the application. See ECF No. 54 at 3. In an order dated March 1, 2023, Judge Broderick noted that "the present record strongly suggests [that Exactcar] is operating in bad faith" and that it is "unquestionably aware of this

1

litigation." See ECF No. 55 at 2. The Court ordered Exactcar to file any opposition to Rodo's request to compel discovery by March 17, 2023, and further set a deadline by which any additional briefing could be submitted. Id. at 2-3. Exactcar failed to file an opposition by the March 17 deadline, but asked Rodo for an extension of time, until March 20, 2023, to produce documents responsive to the subpoena. See ECF No. 59 at 1. On March 20, 2023, Exactcar produced a single document and a one-page unsigned response to the subpoena, representing that it had no other documents responsive to the subpoena. See ECF No. 59-2.

On March 23, 2023, Rodo renewed its motion to compel Exactcar's compliance with the subpoena. See ECF No. 59. As is relevant here, Exactcar, in its response to the subpoena, claimed that it had no communications concerning Rodo's business. But Rodo pointed out that this representation could not be accurate because it had received from Defendants text messages that included Mr. Azzouz and discussed Rodo's business. Id. at 59 at 1-2. Additionally, the text messages Rodo already had obtained from Defendants demonstrated that Mr. Azzouz had used his cell phone to send business communications. See ECF No. 72 at 2.

Following a conference on April 20, 2023, the Court directed Exactcar to fully respond to the subpoena by no later than May 22, 2023. See ECF No. 68. On June 1, 2023, Rodo submitted a letter to the Court, indicating that Exactcar had produced additional documents responsive to the subpoena but contending that the production was deficient because, for instance, it did not include any text messages or messages from other cell phone messaging applications that were made to or from Mr. Azzouz. See ECF No. 72 at 1. In response, counsel for Exactcar submitted a letter and an amended sworn declaration from Mr. Azzouz, in his capacity as custodian of records for Exactcar. The letter and declaration explained the methodology used to search for documents responsive to the subpoena. See ECF No. 74. As it pertained specifically to

communications, the declaration stated that Mr. Azzouz did not have "any communications by text message on [his] cell phone that concerned Rodo." ECF No. 74-1 at 3. The declaration explained that Mr. Azzouz's cell phone, which he used during the time period requested in the subpoena, had "been set for a number of years preceding the date of the subpoena in this matter to delete all messages every 30 days automatically." Id.

In response to Mr. Azzouz's declaration, Rodo argued that Exactcar had a duty to preserve the text messages and should be sanctioned for its spoliation of those messages.[1] See ECF No. 76 at 2. Rodo sought an order requiring Exactcar to pay all of its attorneys' fees incurred in having to move for Exactcar's compliance with the subpoena and an additional fine of no less than $25,000 as a sanction for its spoliation of the text-message evidence. Additionally, Rodo argued that Exactcar and Mr. Azzouz are "in privity with, acting in conjunction and on behalf of, and paying the legal fees of, Defendants," and thus the Court should issue an adverse inference against both Defendants based on Exactcar's spoliation of evidence. Id. at 3.

On September 12, 2023, Exactcar's counsel filed a motion to withdraw as counsel, explaining that Exactcar had failed to pay its attorneys' fees and that Mr. Azzouz had been uncooperative with counsel. See ECF No. 77-1. The Court granted the motion on September 15, 2023. See ECF No. 78. Since that date, no attorney has appeared to represent Exactcar with respect to Rodo's motion to compel and for sanctions.

---

[1] Although Rodo's motion initially contended that Exactcar's document production was deficient for other additional reasons—separate and apart from the lack of text-message communications (see, e.g., ECF No. 72 at 3)—Rodo has since narrowed the scope of its motion. During a conference with the Court on December 4, 2023, Rodo's counsel confirmed that Rodo's motion to compel was now limited to Exactcar's failure to preserve and produce relevant text-message communications responsive to the requests in the subpoena.

3

On October 23, 2023, the Court held a conference to address Rodo's motion to compel and neither counsel for Exactcar nor Mr. Azzouz appeared at the conference. Subsequently, the Court issued an order warning Exactcar that its failure to appear to respond to Rodo's motion to compel could potentially result in sanctions. See ECF No. 80. The Court held another conference on December 4, 2023, and again neither Exactcar nor Mr. Azzouz appeared.[2]

## DISCUSSION

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010), abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135 (2d Cir. 2012). For parties to a litigation, "the duty to preserve evidence arises when a party reasonably anticipates litigation." Id. (citing Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001)); see also Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008) ("[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.") (citation and internal quotation marks omitted). For a non-party, there is typically no duty to preserve evidence for use by others. See, e.g., Castro v. Smith, No. 16-CV-8147 (JGLC), 2023 WL 5371211, at *6 (S.D.N.Y. Aug. 22, 2023). A duty, however, may be imposed on a non-party if the non-party is notified of the action and instructed to preserve certain evidence through, for instance, a document-preservation subpoena. See. e.g., In

---

[2] Mindful that Exactcar's attorney withdrew on September 15, 2023, the Court has sent electronic copies of its orders—scheduling the conferences to discuss Rodo's motion to compel as well as the October 23 order at ECF No. 80, to Mr. Azzouz directly via an e-mail address provided by the parties, at which the parties had previously communicated with Mr. Azzouz.

re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012).

> A party seeking sanctions for spoliation of evidence must establish:
>
> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Zubulake v. US Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004). "Where these three elements are established, a court must then decide what, if any, sanction is appropriate." Creighton v. City of New York, No. 12-CV-7454 (PGG), 2017 WL 636415, at *14 (S.D.N.Y. Feb. 14, 2017). "That determination 'is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'" Id. (quoting Fujitsu Ltd. V. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." Pension Committee, 685 F. Supp. 2d at 465. "Generally speaking, if the spoliating party behaved negligently, some sanction should be imposed, with the harshness of the sanction determined by the culpability of the party and, in the case of more severe sanctions, the prejudice caused by the spoliation." Merck Eprova AG v. Gnosis S.P.A., No. 07-CIV-5898 (RJS), 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010) (citing Pension Comm., 685 F. Supp. 2d. at 467).

In a demand to cease and desist from October 25, 2022, Rodo alerted Exactcar of its obligation to "preserve all evidence that may be relevant to or lead to the discovery of information, including Electronically Stored Information" such as "electronic communications" stored on "handheld wireless devices, cell phones, [and] smart phones." See ECF No. 16-1 at 7-

5

8. That letter was sent to Mr. Azzouz even before the subpoena at issue here was served and at a time when Exactcar was still represented by counsel. Additionally, the subpoena at issue was served on Exactcar on December 15, 2022. See ECF No. 16-1 at 1. Yet, despite the warning to preserve documents, including electronic communications contained specifically on cell phones, Mr. Azzouz submitted a sworn declaration dated June 12, 2023, made under penalty of perjury, explaining that the text messages on his phone had been automatically deleted, including for the time period after Exactcar was in receipt of the subpoena. See ECF No. 74-1 at 6. Mr. Azzouz does not even indicate in his declaration whether he has turned off the automatic deletion feature or made any attempt to recover the text messages that had been deleted. In other words, Mr. Azzouz took no steps to attempt to preserve his text messages despite being obligated to do so. He also took no steps to recover the text messages that had been automatically deleted.

At a minimum, Mr. Azzouz's declaration indicates that he acted negligently in failing to preserve his text-message communications. And this conduct occurred at a time when Exactcar was still represented by counsel. For this conduct, Rodo is correct that a sanction against Exactcar is appropriate. See Merck Eprova AG, 2010 WL 1631519, at *4 (imposing "cost-shifting and a fine" as a sanction for spoliation of evidence). Rodo seeks a fine of no less than $25,000, as well as the attorneys' fees it incurred in seeking Exactcar's compliance with the subpoena. See ECF No. 76 at 3. A monetary award of that amount, however, is not warranted at this point. Exactcar did eventually comply with the subpoena and produced responsive documents in its possession. And Rodo is no longer challenging the adequacy of Exactcar's compliance with the subpoena in that respect. Moreover, as it pertains specifically to the text-message evidence, Rodo has at least some of the communications between Defendants and Exactcar, because Defendants themselves produced text messages in their possession.

Nevertheless, Exactcar did initially fail to respond to the subpoena, leading to unnecessary motion practice. And, as discussed, Exactcar took no steps to preserve relevant evidence. Exactcar is ordered to pay Rodo's reasonable attorneys' fees incurred in seeking to compel Exactcar's compliance with the subpoena. To the extent Rodo also seeks an adverse inference against Defendants for Exactcar's conduct, see ECF No. 76 at 3, that requested relief is denied. There is no evidence in the record to show that Exactcar and Mr. Azzouz are paying the legal fees of Defendants, as Rodo claims. And the record is also devoid of any evidence that Exactcar and Mr. Azzouz, on the one hand, and Defendants, on the other, are acting together or in privity, such that Defendants should be responsible for Exactcar and Mr. Azzouz's conduct.

## CONCLUSION

Exactcar is ordered to pay Rodo's reasonable attorneys' fees incurred in connection with Rodo's motion to compel Exactcar's compliance with the subpoena. The Clerk of Court is respectfully directed to terminate the letter motion at ECF No. 59.

**SO ORDERED.**

DATED:   New York, New York
         December 8, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge